UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

 Melissa H. Kunig                                              N/A
      Deputy Clerk                                       Court Reporter

 Attorneys Present for Plaintiff:              Attorneys Present for Defendants:

        Not Present                                        Not Present

**PROCEEDINGS: ORDER GRANTING IN PART AND DENYING IN PART
                    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [109]**

        Before the court is Defendants Ethicon, Inc. and Johnson & Johnson's (collectively, "Defendants") Motion for Summary Judgment on Plaintiff Deborah Cloutier's ("Plaintiff") claims ("Motion" or "Mot."). (Dkt. 109.) Defendants' Motion is supported by the declaration of Defendants' counsel Joshua J. Wes ("Wes Decl.") and exhibits attached therein.[1] (*Id.*) On February 15, 2022, Defendants filed a Request for Judicial Notice ("RJN"). (Dkt. 110.) On March 14, 2022, Plaintiff filed an Opposition to the Motion ("Opposition" or "Opp."). (Dkt. 114.) Plaintiff's Opposition is supported by the declaration of Plaintiff's counsel Kathryn G. Hooten ("Hooten Decl.") and exhibits attached therein. (Dkt. 114-1.) On March 18, 2022, Defendants filed a Reply ("Reply"). (Dkt. 115.) On July 26, 2022, the court took the matter under submission. (Dkt. 127.) Based on the state of the record, as applied to the applicable law, the Motion is **GRANTED IN PART AND DENIED IN PART**.


**I.     PROCEDURAL BACKGROUND**

_____

[1] The court observes that Defendants cite to the "Benedict Declaration" at times in the briefing but that no such declaration was filed. (*See generally* Mot. & Reply.) Given these citations are consistent with corresponding paragraphs of the Wes Declaration, the court interprets references to the "Benedict Declaration" to mean the Wes Declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

This case originated in the multi-district litigation ("MDL") *In re Ethicon, Inc., Pelvic Repair System Products Liability Litigation*, MDL No. 2327 ("Ethicon MDL"), Case No. 2:15-CV-11930 (S.D. W. Va.).  (Dkt. 1.)  On August 11, 2015, Plaintiff filed a Short Form Complaint ("Complaint" or "Compl.") in the Ethicon MDL.  (Hooten Decl. ¶ 5, Exh. D.)  Although the Complaint asserts sixteen causes of action against Defendants (*id*. at 4-5), Plaintiff now concedes all but these three claims: (1) "Count I – Negligence"; (2) "Count III – Strict Liability – Failure to Warn"; and (3) "Count XIV – Gross Negligence."  (Opp. at 1.)  In addition, Plaintiff maintains she is entitled to punitive damages and the benefit of the discovery rule tolling the applicable statutes of limitations under California law, although she recognizes that these are not separate causes of action.  (*Id*.)  Accordingly, at this juncture, the court analyzes only the three remaining claims in the Complaint.

## II.   REQUEST FOR JUDICIAL NOTICE

### a.  Legal Standard

The court may take judicial notice of facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts cannot take judicial notice of facts subject to reasonable dispute.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 n.11 (2007) ("Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") (internal quotation marks omitted).

For example, "courts routinely take judicial notice of letters published by the government . . . as well as records and reports of administrative bodies."  *Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d 843, 851 n.10 (9th Cir. 2016) (citations and internal quotation marks omitted).  Additionally, courts "may consider material which is properly submitted as part of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment," if the material is "physically attached to the complaint." *Lee*, 250 F.3d at 688 (citations and internal quotation marks omitted). "But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

**b. Application**

Defendants request that the court take judicial notice of one exhibit in support of the Motion. (*See* RJN.) The requested exhibit—Exhibit 10 to the Wes Declaration—is a notice from the U.S. Food and Drug Administration ("FDA") entitled "FDA Public Health Notification: Serious Complications Associated with Transvaginal Placement of Surgical Mesh in Repair of Pelvic Organ Prolapse and Stress Urinary Incontinence" posted on October 20, 2008. (*Id.*)

The court finds that judicial notice of the FDA Public Health Notification is appropriate because courts regularly take judicial notice of materials prepared by government agencies. *See, e.g., United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) ("Courts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'") (quoting *Interstate Nas. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). *See also Hansen Beverage Co. v. Innovation Ventures, LLC*, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) (taking judicial notice of materials from the FDA's website under Federal Rule of Evidence 201); *Gustavson v. Wrigley Sales Co.*, 2014 WL 60197, at *3, n.2 (N.D. Cal. Jan. 7, 2014) (taking judicial notice of FDA guidance document available on the FDA's website).

Here, although Plaintiff opposes Defendants' argument that the FDA Public Health Notification can trigger the statute of limitations (see Opp. at 16-17), the parties do not dispute that the FDA is a government agency or that the document was posted on the FDA's official website. (*See generally* RJN; Opp.) Accordingly, based on the state of the record, as applied to the applicable law, the court **GRANTS** Defendants' Request for Judicial Notice as to Exhibit 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

## III.   EVIDENTIARY OBJECTIONS, AND DETERMINATION OF WHETHER CERTAIN OBJECTED TO FACTS ARE DISPUTED[2]

    "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) ("A district court's ruling on a motion for summary judgment may only be based on admissible evidence."). In the context of a summary judgment, a district court "must also rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). "A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *accord Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 211 L. Ed. 2d 400 (Dec. 13, 2021). Additionally, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at

---

[2] In its analysis of the Motion, the court makes its determination of what constitutes a disputed fact based on its review of the record, including the Statement of Uncontroverted Facts, supporting evidence, and its ruling on the parties' objections raised in connection with the Motion. *See AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1071 (C.D. Cal. 2015) ("In deciding the motions for summary judgment, the [c]ourt examines the underlying evidence, not the summary statements or . . . compound paragraphs offered in the parties' statements of undisputed facts.") (citation omitted), *aff'd sub nom. AFMS LLC v. United Parcel Serv., Inc.*, 696 F. App'x 293 (9th Cir. 2017); *Bischoff v. Brittain*, 183 F. Supp. 3d 1080, 1084 (E.D. Cal. 2016) ("[T]he court will not consider [] objections aimed at the characterization or purported misstatement of the evidence as represented . . . . The court's decision relies on the evidence submitted rather than how that evidence is characterized in the statements.") (citation omitted); *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) ("[T]he [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented.") (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

trial, a court may still consider that evidence." *Burch*, 433 F. Supp. 2d at 1120; *see Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

"'[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself' and unnecessary to consider here." *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (alteration in original) (quoting *Burch*, 433 F. Supp. 2d at 1119) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues." *Holt*, 370 F. Supp. 3d at 1164 (citing *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013)). "Accordingly, the Court does not consider any objections on the grounds that the evidence is irrelevant, speculative, argumentative, prejudicial, that it constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge." *Id*. (citing *Burch*, 433 F. Supp. 2d at 1122); *see also Sandoval*, 985 F.3d at 665-67. "Similarly, the Court will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented." *Holt*, 370 F. Supp. 3d at 1164 (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008)).

In this instance, the proffered evidentiary record is robust, and the court must first address the parties' evidentiary objections before proceeding.[3] (*See generally* Dkt. 114-2 (Plaintiff's

---

[3] The court addresses only the evidentiary objections relating to the material facts relied upon in its analysis. *See Burch*, 433 F. Supp. 2d at 1122 ("[T]he court will proceed [only] with any necessary rulings on defendants' evidentiary objections and then address the merits of the motions for summary judgment."). The court observes the parties often assert objections based on asserted "conflict[s]" or lack of support in evidence rather than legal argument, and, aside from scattered exceptions noted above, do not cite to evidentiary codes, case law, or state the legal grounds on which their objections rest with particularity. *See Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009) ("In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

Statement of Genuine Disputes in Opposition to Defendants' Statement of Uncontroverted
Facts); Dkt. 115-1 (Defendants' Reply to Plaintiff's Response to Defendants' Statement of
Uncontroverted Material Facts and Response to Plaintiff's Separate Statement of Material
Facts)).  Having reviewed the record, including the Statement of Uncontroverted Facts,
supporting evidence, and the parties' arguments, the court rules as follows:

**a.  Plaintiff's Objections**

      i.  <u>Defendants' SUF No. 2</u>

The court **OVERRULES** Plaintiff's objection to the portion of Defendants' SUF No. 2,
which states that "[t]he Prolene mesh Dr. Raz implanted was not indicated for pelvic
implantation, but instead for the treatment of hernias" on the ground that it is "[d]isputed as to
whether the Prolene IFU allowed for pelvic implantation, in addition to the treatment of
hernias."  (Dkt. 115-1 at 3.)  The court finds that Plaintiff's objection that the fact is disputed
has no discernible legal basis.  *See, e.g., Amaretto Ranch Breedables v. Ozimals Inc.*, 907 F.
Supp. 2d 1080, 1081 (N.D. Cal. 2012) (overruling and declining to specifically address
"boilerplate evidentiary objections"); *Communities Actively Living Indep. & Free v. City of Los
Angeles*, 2011 WL 4595993, at *8 (C.D. Cal. Feb. 10, 2011) (summarily overruling boilerplate
evidentiary objections where asserted grounds were unduly vague and overbroad).

In terms of whether the facts in SUF No. 2 are disputed, the court finds there is a genuine
dispute as to whether, based on the plain language of the Instructions for Use ("IFU"), the IFU
permitted pelvic implantation.  Plaintiff points to, among other evidence, the text of the IFU.
*See* Hooten Decl. ¶ 7, Exh. F, IFU ("This mesh may be used for the repair of hernia and *other
fascial deficiencies* that require the addition of a reinforcing or bridging material to obtain the
desired surgical result.") (emphasis added).  The court finds that based on the contradictory

scrutinize each objection and give a full analysis of each argument raised.  This is especially
true when many of the objections are boilerplate recitations of evidentiary principles or blanket
objections without analysis applied to specific items of evidence.").  Accordingly, the court
does not consider the parties' objections related to the weight of the evidence here, and, to the
extent an asserted legal objection is not discussed above, it is overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

evidence offered by the parties, there is a genuine dispute as to whether the IFU allowed for pelvic implantation.  Accordingly, the court finds the portion of Defendants' SUF No. 2 cited above is not an undisputed fact for purposes of the Motion.

      ii.  <u>Defendants' SUF No. 10</u>

      The court **OVERRULES** Plaintiff's objection to Defendants' SUF No. 10, which states that "[a]t the time of Plaintiff's implant in 2000, the mesh in Prolene mesh for hernia repair was *not* the same as the mesh in Ethicon's devices indicated for pelvic repair" on the ground that Ethicon's corporate witness offered contradictory testimony.  (Dkt. 115-1 at 8.)  The court finds that Plaintiff's objection that the fact is disputed has no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

      In terms of whether the facts in SUF No. 10 are disputed, the court finds there is a genuine dispute as to whether Prolene mesh has always been the same, whether used in Defendants' hernia products or transvaginal mesh products.  Plaintiff points to the deposition testimony of Ethicon's corporate witness.  (*See* Hooten Decl. ¶ 8, Exh. G, Angelini Dep. at 81:18-21; Hooten Decl. ¶ 9, Exh. H, Hellhammer Dep. at 95:8-21.)  The court finds that based on the contradictory evidence offered by the parties, there is a genuine dispute as to whether the same mesh has been used in Defendants' hernia mesh and transvaginal mesh products.  Accordingly, the court finds Defendants' SUF No. 10 is not an undisputed fact for purposes of the Motion.

      iii.  <u>Defendants' SUF No. 11</u>

      The court **OVERRULES** Plaintiff's objection to Defendants' SUF No. 11, which states that Plaintiff's Prolene mesh has a smaller pore size than another hernia mesh product on the ground that Ethicon's corporate witness offered contradictory testimony.  (Dkt. 115-1 at 10.) The court finds that Plaintiff's objection that the fact is disputed has no discernible legal basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                     Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

*See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in SUF No. 11 are disputed, the court finds there is a genuine dispute as to whether Prolene mesh has always been the same, whether used in Defendants' hernia products or transvaginal mesh products. Plaintiff points to the deposition testimony of Ethicon's corporate witness. (*See* Hooten Decl. ¶ 8, Exh. G, Angelini Dep. at 81:18-21; Hooten Decl. ¶ 9, Exh. H, Hellhammer Dep. at 95:8-21.) The court finds that based on the contradictory evidence offered by the parties, there is a genuine dispute as to whether the same mesh has been used in Defendants' hernia mesh and transvaginal mesh products. Accordingly, the court finds Defendants' SUF No. 11 is not an undisputed fact for purposes of the Motion.

   iv.   Defendants' SUF No. 12

The court **OVERRULES** Plaintiff's objection to Defendants' SUF No. 12, which states that Plaintiff's expert Dr. Rosenzweig offers no opinions about how the differences in design, including the pore size, of Prolene mesh as compared to other urinary incontinence devices, could affect Plaintiff's outcome on the ground that Plaintiff's expert *has* offered an opinion. (Dkt. 115-1 at 10-11.) The court finds that Plaintiff's objection that an expert opinion has been offered has no discernible legal basis. *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in SUF No. 12 are disputed, the court finds there is a genuine dispute as to whether Dr. Rosenzweig opined on how the design of Prolene mesh could affect Plaintiff's outcome. Plaintiff cites portions of the expert report of Dr. Rosenzweig, which lists "loss of pore size with tension" as one of the design flaws of Prolene mesh. (*See* Hooten Decl. ¶ 11, Exh. J, August 19, 2019, Rule 26 Expert Rep. of Bruce Rosenzweig, M.D. at 7-11,13.) The court finds that based on the contradictory evidence offered by the parties, there is a genuine dispute as to whether Dr. Rosenzweig opined on how the design of Prolene mesh could affect Plaintiff's outcome. Accordingly, the court finds Defendants' SUF No. 12 is not an undisputed fact for purposes of the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

     v.  Defendants' SUF No. 13

     The court **OVERRULES** Plaintiff's objection to Defendants' SUF No. 13, which states that "Dr. Raz used the Prolene mesh in a surgery not indicated by Ethicon's IFU, and did not rely on the IFU in prescribing this device to treat Ms. Cloutier" on the ground that Dr. Raz offered contradictory testimony.  (Dkt. 115-1 at 11-12.)  The court finds that Plaintiff's objection that the fact is disputed has no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

     In terms of whether the facts in SUF No. 13 are disputed, the court finds there is a genuine dispute as to whether Dr. Raz relied on the Prolene mesh IFU.  Plaintiff cites contrary testimony from the deposition of Dr. Raz.  (*See* Hooten Decl. ¶ 3, Exh. B, Raz Dep. at 159:12-18 ("Q: And in 2000 did you also rely upon Ethicon's representations about their product and what they said the risks were?  A: Yes.  Q: And that would include, would it not, the instructions for use that were there in 2000?  A: Yes.").)  The court finds that based on the contradictory evidence offered by the parties, there is a genuine dispute as to whether Dr. Raz relied on the Prolene mesh IFU.  Accordingly, the court finds Defendants' SUF No. 13 is not an undisputed fact for purposes of the Motion.

     vi.  Defendants' SUF No. 14

     The court **OVERRULES** Plaintiff's objection to Defendants' SUF No. 14, which states that "Dr. Raz did not rely on Prolene mesh's IFU in performing Ms. Cloutier's surgery because he used his own novel procedure" on the ground that Dr. Raz offered contradictory testimony. (Dkt. 115-1 at 12-13.)  The court finds that Plaintiff's objection that the fact is disputed has no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

     In terms of whether the facts in SUF No. 14 are disputed, the court finds there is a genuine dispute as to whether Dr. Raz relied on the Prolene mesh IFU.  Plaintiff cites contrary testimony from the deposition of Dr. Raz.  (*See* Hooten Decl. ¶ 3, Exh. B, Raz Dep. at 159:12-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

18 ("Q: And in 2000 did you also rely upon Ethicon's representations about their product and
what they said the risks were?  A: Yes.  Q: And that would include, would it not, the
instructions for use that were there in 2000?  A: Yes.").)  The court finds that based on the
contradictory evidence offered by the parties, there is a genuine dispute as to whether Dr. Raz
relied on the Prolene mesh IFU.  Accordingly, the court finds Defendants' SUF No. 14 is not an
undisputed fact for purposes of the Motion.

> vii.  Defendants' SUF No. 16

The court **OVERRULES** Plaintiff's objection to Defendants' SUF No. 16, which states
that Plaintiff's complications were "known risks" and that Dr. Raz "knew about the risks . . .
prior to performing her surgery in 2000" on the ground that Dr. Raz offered contradictory
testimony.  (Dkt. 115-1 at 14-15.)  The court finds that Plaintiff's objection that the fact is
disputed has no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081;
*Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in SUF No. 16 are disputed, the court finds there is a
genuine dispute as to whether Plaintiff's complications were "known risks" and Dr. Raz "knew
about the risks . . .  prior to performing her surgery in 2000."  Plaintiff cites contrary testimony
from the deposition of Dr. Raz.  (*See* Hooten Decl. ¶ 3, Exh. B, Raz Dep. at 31:11-22; 34:10-
35:13; 142:14-20; 144:3-23.)  The court finds that based on the contradictory evidence offered
by the parties, there is a genuine dispute as to whether Plaintiff's complications were "known
risks" and Dr. Raz "knew about the risks . . .  prior to performing her surgery in 2000."
Accordingly, the court finds Defendants' SUF No. 16 is not an undisputed fact for purposes of
the Motion.

> viii.  Defendants' SUF No. 22

The court **OVERRULES** Plaintiff's objection to Defendants' SUF No. 22, which states
that Plaintiff "believes that her injuries from her Prolene mesh began as early as 2001" to the
extent that Defendants suggest the statute of limitations began on this date. (Dkt. 115-1 at 18.)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

The court finds that Plaintiff's objection that the fact may misstate the start of the limitations period has no discernible legal basis. *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in SUF No. 22 are disputed, the court finds there is a genuine dispute as to when Plaintiff discovered her injuries with regard to the limitations period. Plaintiff cites contrary testimony from Plaintiff's deposition. (*See* Hooten Decl. ¶ 4, Exh. C, Cloutier Dep. at 32:10-22, 41:20-42:2.) The court finds that based on the contradictory evidence offered by the parties, there is a genuine dispute as to when Plaintiff discovered her injuries with regard to the limitations period. Accordingly, the court finds Defendants' SUF No. 22 is not an undisputed fact for purposes of the Motion.

      ix.  <u>Defendants' SUF No. 33</u>

The court **OVERRULES** Plaintiff's objection to Defendants' SUF No. 33, which states that on May 28, 2013, Plaintiff returned to UCLA to request the removal of her Prolene mesh sling on the ground that "at this appointment, there was no sign of a defect in the mesh." (Dkt. 115-1 at 23.) The court finds that Plaintiff's objection that the fact is disputed has no discernible legal basis. *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in SUF No. 33 are disputed, the court finds that the evidence cited by Plaintiff does not clearly state that there was "no sign of a defect in the mesh" at Plaintiff's May 28, 2013, appointment. Plaintiff cites to an excerpt of her medical records. (*See* Hooten Decl. ¶ 2, Exh. A, May 28, 2013 medical record.) (*Id*.) The court finds that Plaintiff's cited evidence does not support Plaintiff's contention that during Plaintiff's May 28, 2013, appointment, there was a "sign of a defect in the mesh." Accordingly, the court finds Defendants' SUF No. 33 is an undisputed fact for purposes of the Motion.

  **b.  Defendants' Objections**

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

   i. <u>Plaintiff's SUF Nos. 1, 2, and 3</u>

  The court **OVERRULES** Defendants' objections to Plaintiff's SUF Nos. 1, 2, and 3, which state that Plaintiff underwent surgery on November 30, 2000, had a revision surgery on October 24, 2013, and filed suit on August 11, 2015, on the grounds that the facts are not disputed and duplicative of Defendants' SUF Nos. 1, 35, and 36.  (Dkt. 115-1 at 27-28.)  The court finds that Defendants' objections have no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

  In terms of whether the facts in Plaintiff's SUF Nos. 1, 2, and 3 are disputed, the court finds that Plaintiff's SUF Nos. 1, 2, and 3 are materially the same as Defendants' SUF Nos. 1, 35, and 36.  *See* L.R. 56-2 (a party opposing summary judgment must set forth "all material facts as to which it is contended there exists a genuine dispute necessary to be litigated").  Accordingly, the court finds Plaintiff's SUF Nos. 1, 2, and 3 are not undisputed facts for purposes of the Motion.

   ii. <u>Plaintiff's SUF Nos. 4 and 5</u>

  The court **OVERRULES** Defendants' objections to Plaintiff's SUF Nos. 4 and 5, which state that "Defendants deny its Prolene mesh device can contribute to severe adverse reactions, cause adverse tissue reactions, infection, chronic pain, and functional disabilities" and "Defendants maintain that the Prolene is not defective" on the grounds that the facts are not disputed, do not create a material issue of fact, and are irrelevant.  (Dkt. 115-1 at 28.)  The court finds that Defendants' objections have no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

  In terms of whether the facts in Plaintiff's SUF Nos. 4 and 5 are disputed, the court finds that Plaintiffs' SUF Nos. 4 and 5 restate Defendants' defenses rather than offer undisputed facts.  *See Orr*, 285 F.3d at 773 ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  Accordingly, the court finds Plaintiff's SUF Nos. 4 and 5 are not undisputed facts for purposes of the Motion.

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                      Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

iii.   Plaintiff's SUF No. 6

The court **SUSTAINS** Defendants' objections to Plaintiff's SUF No. 6, which states that
"[a]lthough Ethicon argues that Dr. Raz used Prolene 'off-label,' Ethicon does not explain what
constitutes 'off-label' use" on the ground that Dr. Raz offered contradictory testimony and
Defendants define "off-label" in the Motion.  (Dkt. 115-1 at 28-29.)  The court finds SUF No. 6
constitutes improper argument.  *See McCarthy v. R.J. Reynolds Tobacco Co.*, 2011 WL
13405571, at *2 (E.D. Cal. Mar. 31, 2011) (noting "statements based on speculation, improper
legal conclusions, or argumentative statements, are not facts and can only be considered as
arguments, not as facts, on a motion for summary judgment.").  Accordingly, the court finds
Plaintiff's SUF No. 6 is not an undisputed fact for purposes of the Motion.

iv.   Plaintiff's SUF No. 7

The court **OVERRULES** Defendants' objection to Plaintiff's SUF No. 7, which states
that "Ethicon's corporate witness testimony confirms that the Prolene mesh used in its future
products (TVT) is the same hernia mesh that Ethicon is referring to here" on the grounds that
the fact is disputed and not material to the Motion.  (Dkt. 115-1 at 29.)  The court finds that
Defendants' objections have no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp.
2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in Plaintiff's SUF No. 7 are disputed, the court finds that
there is a genuine dispute as to whether Prolene mesh has been used in Defendants' other hernia
mesh and transvaginal mesh products.  The parties cite contradictory evidence.  (*Compare*
Hooten Decl. ¶ 8, Exh. G, Angelini Dep. at 81:18-21; Hooten Decl. ¶ 9, Exh. H, Hellhammer
Dep. at 95:8-21, *with* Wes Decl. ¶ 8, Exh. 7, Barbolt Dep. at 107:21-23; 111:7-14.)  The court
finds that based on the contradictory evidence offered by the parties, there is a genuine dispute
as to whether the same mesh has been used in Defendants' other hernia mesh and transvaginal
mesh products.  Accordingly, the court finds Plaintiff's SUF No. 7 is not an undisputed fact for
purposes of the Motion.

---

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

v.  Plaintiff's SUF Nos. 8, 9, 10, 11, and 12

The court **OVERRULES** Defendants' objections to Plaintiff's SUF Nos. 8, 9, 10, and 12 which provide excerpts from the Prolene mesh IFU, testimony from Dr. Raz regarding how he fashioned Plaintiff's sling, and a summary of Plaintiff's implant operative report on the grounds that the facts are not disputed and do not create a material issue of fact. (Dkt. 115-1 at 30-31.) The court finds that Defendants' objections have no discernible legal basis. *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in Plaintiff's SUF No. 8, 9, 10, 11, and 12 are disputed, the court finds Plaintiff's SUF Nos. 8, 9, 10, 11, and 12 summarize the cited evidence. Moreover, the court finds that Defendants do not cite any evidence to the contrary. (Dkt. 115-1 at 30-31.) *See Holt*, 370 F. Supp. 3d at 1164 ("[T]he [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented."). Accordingly, the court finds Plaintiff's SUF Nos. 8, 9, 10, 11, and 12 are undisputed facts for purposes of the Motion.

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

vi.   Plaintiff's SUF Nos. 13 and 14

The court **OVERRULES** Defendants' objections to Plaintiff's SUF Nos. 13 and 14, which state that "Dr. Raz testified numerous times that he read and relied on the IFU" and "Dr. Raz testified that he would have acted differently had he received an adequate warning" and "would not have implanted the Prolene in Plaintiff" on the grounds that the facts are immaterial and misleading. (Dkt. 115-1 at 31-32.)  The court finds that Defendants' objections have no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in Plaintiff's SUF No. 13 and 14 are disputed, the court finds that Plaintiff's SUF Nos. 13 and 14 summarize portions of Dr. Raz's testimony.  *See Holt*, 370 F. Supp. 3d at 1164 ("[T]he [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented.")  Accordingly, the court finds Plaintiff's SUF Nos. 13 and 14 are undisputed facts for purposes of the Motion.

vii.   Plaintiff's SUF No. 15

The court **SUSTAINS** Defendants' objections to Plaintiff's SUF No. 15, which states that "Plaintiff has offered significant expert evidence on the defects of the Prolene mesh and how those defects led to Plaintiff's injuries" on the ground that Plaintiff is improperly offering a legal conclusion rather than a statement of fact. (Dkt. 115-1 at 32.)  *See McCarthy*, 2011 WL 13405571, at *2 (noting "statements based on speculation, improper legal conclusions, or argumentative statements, are not facts and can only be considered as arguments, not as facts, on a motion for summary judgment.").  Accordingly, the court also finds Plaintiff's SUF No. 15 is not an undisputed fact for purposes of the Motion.

viii.   Plaintiff's SUF Nos. 16, 17, and 18

The court **OVERRULES** Defendants' objections to Plaintiff's SUF Nos. 16, 17, and 18, which state that Plaintiff first believed that the mesh was defective after her October 24, 2013,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

revision surgery on the grounds that the facts are immaterial, argumentative, misleading, and not relevant to the Motion.  (Dkt. 115-1 at 32-34.)  The court finds that Defendants' objections have no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

    In terms of whether the facts in Plaintiff's SUF No. 16, 17, and 18 are disputed, the court finds that Plaintiff's SUF Nos. 16, 17, and 18 summarize portions of Plaintiff's testimony.  *See Holt*, 370 F. Supp. 3d at 1164 ("[T]he [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented.")  Accordingly, the court finds Plaintiff's SUF Nos. 16, 17, and 18 are undisputed facts for purposes of the Motion.

        ix.  Plaintiff's SUF Nos. 19, 20, and 21

    The court **OVERRULES** Defendants' objections to Plaintiff's SUF Nos. 19, 20, and 21, which state that Plaintiff's treating physician from 2012 to 2013 did not "note any abnormality" from Plaintiff's sling, Plaintiff did not review her medical records, Plaintiff only hired an attorney after her October 24, 2013, revision surgery, and Dr. Raz testified that he does not believe Prolene mesh is defective on the grounds that the facts are immaterial and irrelevant to the Motion.  (Dkt. 115-1 at 34-35.)  The court finds that Defendants' objections have no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

    In terms of whether the facts in Plaintiff's SUF No. 19, 20, and 21 are disputed, the court finds that Plaintiff's SUF Nos. 19, 20, and 21 summarize the medical notes of Plaintiff's doctor and portions of the depositions of Plaintiff and Dr. Raz.  *See Holt*, 370 F. Supp. 3d at 1164 ("[T]he [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented.")  Accordingly, the court finds Plaintiff's SUF Nos. 19, 20, and 21 are undisputed facts for purposes of the Motion.

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                     Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

x.  Plaintiff's SUF No. 22

The court **SUSTAINS** Defendants' objection to Plaintiff's SUF No. 22, which states that "[i]n Sanchez, the MDL Court, in a case remanded to this district, reviewed a similar transvaginal mesh case and denied summary judgment" on the grounds that the fact is argumentative, immaterial, and summarizes the law in a different case.  (Dkt. 115-1 at 35.)  *See McCarthy*, 2011 WL 13405571, at *2 (noting "statements based on speculation, improper legal conclusions, or argumentative statements, are not facts and can only be considered as arguments, not as facts, on a motion for summary judgment.").  Accordingly, the court also finds Plaintiff's SUF No. 22 is not an undisputed fact for purposes of the Motion.

xi.  Plaintiff's SUF No. 23

The court **OVERRULES** Defendants' objection to Plaintiff's SUF No. 23, which states that "Plaintiff initially suspected her complications (such as incontinence) were 'related to [her] bladder'–not a product defect" on the grounds that the fact is immaterial and not relevant to the Motion.  (Dkt. 115-1 at 35-36.)  The court finds that Defendants' objections have no discernible legal basis.  *See, e.g., Amaretto Ranch*, 907 F. Supp. 2d at 1081; *Communities Actively Living*, 2011 WL 4595993, at *8.

In terms of whether the facts in Plaintiff's SUF No. 23 are disputed, the court finds that Plaintiff's SUF No. 23 summarizes portions of Plaintiff's deposition.  *See Holt*, 370 F. Supp. 3d at 1164 ("[T]he [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented.")  Accordingly, the court finds Plaintiff's SUF No. 23 is an undisputed fact for purposes of the Motion.

---

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

## IV.    FACTUAL BACKGROUND

On November 30, 2000, Plaintiff underwent surgery with Dr. Shlomo Raz at the UCLA
Medical Center in Los Angeles, California, to treat her stress urinary incontinence ("SUI").  (D.
SUF ¶ 1.)  Dr. Raz performed a transvaginal bladder neck suspension, using a sling he created
by cutting a piece out of a sheet of Prolene Polypropylene Surgical Mesh ("Prolene mesh").
(*Id.*)  The Instructions For Use ("IFU") state: "This mesh may be used for the repair of hernia
and other fascial deficiencies that require the addition of a reinforcing or bridging material to
obtain the desired surgical result."  (*Id.* ¶ 2.)

Prolene mesh was not indicated or cleared by the FDA for pelvic reconstruction surgery,
transvaginal use or SUI surgery.  (*Id.* ¶ 3.)  At the time of Plaintiff's implant surgery, other
mesh devices, such as Ethicon's TVT device, were specifically cleared by the FDA to be used
for surgical treatment of SUI through transvaginal placement.  (*Id.* ¶ 4.)  Dr. Raz admits his use
of Prolene mesh was off-label and that the device was not intended to be used for treatment of
SUI.  (*Id.* ¶ 5.)  Dr. Raz testified:

> Q. Do you agree with me that there's nothing in this IFU [the IFU for Prolene mesh]
> that states it is indicated for the use of pelvic-floor surgery?
> A. Correct.
> Q. In fact, you used it in an off-label way; correct?
> A. Yes.

(*Id.*)

Dr. Raz stated of Prolene mesh's description in the IFU: "This is not for stress
incontinence, the description."  (*Id.* ¶ 6.)  Plaintiff's case-specific expert, Dr. Bruce A.
Rosenzweig, agrees that Dr. Raz's use of Prolene mesh was off-label:

> Q. And the Prolene mesh that was implanted in Plaintiff, that was a hernia mesh,
> correct?

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

> A. Correct.
> . . .
> Q. Doctor, does the IFU for Prolene mesh specifically reference using the product
> to treat stress urinary incontinence?
> A. No. As what was described in Dr. Ostergard's deposition, he was using it, quote
> unquote, "off-label."
> Q. So, it's fair to say it was used off label in this case?
> A. Correct.

(*Id.* ¶ 7.)

As acknowledged by Plaintiffs' expert Dr. Rosenzweig, different pre-cut mesh medical
devices were available at the time of Plaintiff's 2000 surgery, including Ethicon's "TVT" mesh
device indicated to treat stress urinary incontinence:

> Q. Doctor, at the time whenever Dr. Raz implanted Plaintiff with the Prolene mesh
> in 2000, there was already pre-cut meshes such as TVT on the market?
> A. Correct.
> Q. And TVT in the market at the time was specifically indicated for stress urinary
> incontinence, correct?
> A. Correct.

(*Id.* ¶ 8.)

Dr. Raz's decision to use Prolene mesh off-label instead of a TVT mesh kit in 2000 was
driven by the relative cost of the two devices.  (*Id.* ¶ 9.)  Dr. Raz agreed that Prolene mesh's
IFU did not describe the manner in which he cut and implanted the mesh as a sling to treat
Plaintiff's stress urinary incontinence.  (*Id.* ¶ 15.)  Plaintiff alleges that she sustained asthma,
chronic arthritis, dyspareunia, hip pain, dry eyes and mouth, odor, constant sinus infections and
loss of taste, incontinence, vaginal problems, an immune disorder, and general deterioration of

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

her health as a result of the Prolene mesh device.  (*Id*. ¶ 17.)  Plaintiff testified that she attributes most of her health problems to her 2000 Prolene mesh implant:

> Q. Is it fair to say that you're really blaming all of your health problems on mesh?
> . . .
> A. I think it's fair to say the majority of them.

(*Id*. ¶ 18.)

Plaintiff's expert, Dr. Rosenzweig, does not agree that all of Plaintiff's alleged health concerns resulted from her Prolene mesh implant.  (*Id*. ¶ 19.)  In his Expert Report, he opines only that there is "no cause for the vaginal pain, mesh erosion and overactive bladder" other than the Prolene mesh.  (*Id*.)  Dr. Rosenzweig testified that his most recent August 19, 2019, Rule 26 Report contains his expert opinions in this case.  (*Id*. ¶ 20.)  In accord with his Report, Dr. Rosenzweig testified that he only found that three of Plaintiff's alleged injuries (mesh erosion, overactive bladder, and vaginal pain) were attributable to her mesh.  (*Id*. ¶ 21.)

On March 22, 2010, Plaintiff applied for social security disability insurance benefits, alleging disabilities including 'unmanageable' urinary incontinence.  (*Id*. ¶ 23.)  A fully favorable May 2, 2011, decision granted her disability benefits, dating her disability from January 20, 2009.  (*Id*.)  On April 27, 2011, Plaintiff reported urinary urgency, frequency, nocturia, and incontinence, but not dysuria, to Dr. Carol L. Mitchell-Springer.  (*Id*. ¶ 24.)  Specifically, Plaintiff described experiencing incontinence with increasing severity in the two years before this appointment.  (*Id*.)  Dr. Mitchell-Springer prescribed medication to treat Plaintiff's urinary symptoms but told Plaintiff that she should have a cystoscopy if she was "not responsive to medications."  (*Id*. ¶ 25.)  Plaintiff had severe side effects from the medication Dr. Mitchell-Springer prescribed and discontinued the medication after her reaction.  (*Id*. ¶ 26.)  After her failed treatment of her urinary symptoms with medication, Plaintiff did not continue to consult Dr. Mitchell-Springer.  (*Id*. ¶ 27.)

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                     Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

 In August 2011, Dr. Roger Biehl attempted to set up an appointment to continue Plaintiff's care, but Plaintiff did not keep that appointment. (*Id*. ¶ 28.) Plaintiff told Dr. Biehl's office that she would reschedule due to a death in her family. (*Id*.) On December 14, 2012, Plaintiff consulted Dr. Biehl about urinary symptoms similar to those she described to Dr. Mitchell-Springer: urine leakage, including overactive bladder symptoms, and stress urinary incontinence. (*Id*. ¶ 29.) After urodynamic testing, Plaintiff had an additional consultation with Dr. Biehl on December 21, 2012, and a follow-up appointment on February 4, 2013. (*Id*. ¶ 30.) At the February 2013 appointment, Dr. Biehl noted in his records that Plaintiff would follow up in 6 weeks. (*Id*.) Plaintiff remembered that Dr. Biehl, whom she did not see after early 2013, told her she had a fistula. (*Id*. ¶ 31.) Plaintiff testified that she made an appointment with Dr. Raz, and "it took [her] quite some time to get in to see him." (*Id*. ¶ 32.)

 On May 28, 2013, Plaintiff returned to UCLA to request the removal of her Prolene mesh sling. (*Id*. ¶ 33.) She saw Dr. Lisa Rogo-Gupta and stated that her request for sling removal was based in part on her own internet research, as well as due to her worsening incontinence and failed medication treatment. (*Id*.) Dr. Rogo-Gupta performed a physical examination and determined that Plaintiff had vaginal atrophy and that her sling was palpable. (*Id*.) After an "extensive[]" consultation, Plaintiff persisted in her desire to proceed with sling removal performed by Dr. Raz. (*Id*.)

 On September 26, 2013, Plaintiff told her doctor in Alaska, Dr. Kathleen Case, that she was having "immune problems" that she believed were caused by the mesh. (*Id*. ¶ 34.) Plaintiff further reported that when she saw the doctors at UCLA, in the spring of 2013, they told her they had seen women with systemic problems related to the sling, and Dr. Raz "had offered to remove the sling." (*Id*.) Plaintiff finally had mesh removal surgery, with Dr. Shlomo Raz, on October 24, 2013. (*Id.* ¶ 35.) Plaintiff filed this lawsuit on August 11, 2015. (*Id*. ¶ 36.) In October 2008, the FDA issued a Public Health Notification on its website warning of "Serious Complications Associated with Transvaginal Placement of Surgical Mesh in Repair of Pelvic Organ Prolapse and Stress Urinary Incontinence." (*Id*. ¶ 37.)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

The IFU states that the mesh's construction "permits the mesh to be cut into any desired shape or size without unraveling." (P. SUF No. 8.) The "Actions" section emphasizes Prolene's versatility: "PROLENE mesh . . . reinforce traumatic or surgical wounds to provide extended support." (emphasis added). (*Id.*) Moreover, under the "Indications" section, it states, "[t]his mesh may be used for . . . other fascial deficiencies that require the addition of a reinforcing or bridging material to obtain the desired surgical result." (*Id.* ¶ 9.) The IFU only contraindicates the use of Prolene in two instances: use in infants and children; and use in contaminated wounds. (*Id.* ¶ 10.)

Dr. Raz testified that he "cut [the Prolene Mesh] 10 centimeter by 1 centimeter" to fashion a sling. (*Id.* ¶ 11.) In the "implant operative report," Dr. Raz indicates he planned to perform three surgical procedures: transvaginal bladder neck suspension sling procedure using Prolene mesh; cystoscopy; and placement of suprapubic catheter. (*Id.* ¶ 12.) Dr. Raz testified numerous times that he read and relied on the IFU. (*Id.* ¶ 13.) Dr. Raz testified that he would have acted differently had he received an adequate warning. (*Id.* ¶ 14.) Specifically, he would not have implanted Prolene mesh in Plaintiff. (*Id.*)

At no point did any of Plaintiff's treating medical professionals inform her that her mesh was defective prior to her October 24, 2013, surgery. (*Id.* ¶ 16.) On May 28, 2013, a physician at Dr. Raz's office told her the opposite—that there was no sign of infection or erosion. (*Id.*) Plaintiff testified she first understood her mesh may be defective when Dr. Raz informed her post-operatively on October 24, 2013, that he had discovered infected mesh and that the mesh penetrated the vaginal wall. (*Id.* ¶ 17.) Plaintiff testified that prior to her October 2013 revision surgery, neither Plaintiff nor any of her treating physicians knew what caused her symptoms. (*Id.* ¶ 18.)

Plaintiff's treating physician from 2012 to 2013, Dr. Biehl, testified that he believed she was implanted with a non-mesh sling and a cadaveric sling; at no time did he "note any abnormality that [he] thought was from [Plaintiff's] sling." (*Id.* ¶ 19.) Plaintiff never reviewed her medical records and did not hire an attorney until after her October 24, 2013, revision surgery. (*Id.* ¶ 20.) Dr. Raz testified that he does not believe the Prolene mesh is defective.

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

(*Id*. ¶ 21.)  Plaintiff initially suspected her complications (such as incontinence) were "related to [her] bladder"—not a product defect.  (*Id*. ¶ 23.)

## V.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id.* at 248. "Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or part of each claim."  *Am. Student Fin. Grp., Inc. v. Dade Med. Coll., Inc*., 180 F. Supp. 3d 671, 677-78 (S.D. Cal. 2015).

"As to materiality, the substantive law will identify which facts are material."  *Anderson*, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by pointing out that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").  The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quoting prior version of Fed. R. Civ. P. 56(e)); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson*

**CIVIL MINUTES – GENERAL**

23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

*v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp. Sec. Litig.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial,

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                        Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

the moving party need only prove that there is an absence of evidence to support the
non-moving party's case.  *Id*. at 325, 106 S.Ct. 2548. Where the moving party meets
that burden, the burden then shifts to the non-moving party to designate specific facts
demonstrating the existence of genuine issues for trial.  *Id.* at 324, 106 S.Ct. 2548.
This burden is not a light one.  The non-moving party must show more than the mere
existence of a scintilla of evidence.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,
252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The non-moving party must do more
than show there is some "metaphysical doubt" as to the material facts at issue.
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct.
1348, 89 L.Ed.2d 538 (1986).  In fact, the non-moving party must come forth with
evidence from which a jury could reasonably render a verdict in the non-moving
party's favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. In determining whether a
jury could reasonably render a verdict in the non-moving party's favor, all justifiable
inferences are to be drawn in its favor.  *Id*. at 255, 106 S.Ct. 2505.

627 F.3d 376, 387 (9th Cir. 2010).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment. . . against
a party who fails to make a showing sufficient to establish the existence of an element essential
to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v.
Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted).  "Where no such showing is
made, the moving party is entitled to a judgment as a matter of law because the nonmoving
party has failed to make a sufficient showing on an essential element of her case with respect to
which she has the burden of proof." *Id.* (cleaned up).

**VI.   DISCUSSION**

**a.  There Is a Genuine Dispute as to When Plaintiff's Claims Accrued**

Defendants argue that Plaintiff's claims are time-barred.  (Mot. at 15-19.)  Defendants
assert Plaintiff's claims are subject to a two-year statute of limitations under California law, and

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

that by May 28, 2013, Plaintiff suspected that the Prolene mesh was the cause of her injuries.
(*Id.*)  Accordingly, Defendants maintain Plaintiff's claims accrued on or before May 28, 2013,
and expired on May 28, 2015.  (*Id.* at 19.)  Defendants therefore contend that the claims in this
suit are time-barred because Plaintiff did not file suit until August 11, 2015.  (*Id.*)

     Plaintiff argues her claims did not accrue until October 24, 2013, when she was informed
post-operation that her mesh was infected and had penetrated her vaginal wall—the point at
which Plaintiff maintains she first suspected wrongdoing.  (Opp. at 7-17.)  Plaintiff further
argues a Public Health Notification from the FDA did not trigger the statute of limitations.  (*Id.*
at 16-17.)

     As a threshold matter, the court considers the parties' arguments as to whether the FDA
Public Health Notification triggered the statute of limitations.  Plaintiff argues that under
California law, the issuance of an FDA Public Health Notification cannot put a plaintiff on
notice of her potential claims related to that notice.  (Opp. at 16-17.)  Plaintiff cites to California
Code of Civil Procedure § 340.8(c)(2), which provides that "[m]edia reports regarding the
hazardous material or toxic substance contamination do not, in and of themselves, constitute
sufficient facts to put a reasonable person on inquiry notice that the injury or death was caused
or contributed to by the wrongful act of another."  (*Id.* (citing Cal. Code Civ. Proc.
§ 340.8(c)(2).)  Plaintiff also contends the California Court of Appeal extended this statute to
actions involving prescription drugs in *Nelson v. Indevus Pharms., Inc.*, 142 Cal. App. 4th 1202,
1209 (2006).  (*Id.* at 16-17.)

     The court agrees with Plaintiff that under Cal. Code Civ. Proc. § 340.8(c)(2) and *Nelson*,
142 Cal. App. 4th at 1209, the FDA Public Health Notification cannot be used to establish that
Plaintiff was on inquiry notice for the statute of limitations.  *See also In re Swine Flu Prod.
Liab. Litig.*, 764 F.2d 637, 641 (9th Cir. 1985) ("[W]e have recently held that a series of press
releases . . . did not put a plaintiff who had suffered injuries arising out of her use of the Dalkon
Shield intrauterine device on notice for purposes of the discovery rule.") (citing *Allen v. A.H.
Robins*, 752 F.2d 1365, 1370-71 (9th Cir. 1985)).  Accordingly, the court finds that the

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

publication of the FDA Public Health Notification alone did not commence the start of the limitations period.

Under California law, personal injury claims are subject to a two-year statute of limitations.  *See* Cal. Civ. Proc. Code § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."); *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 809 n.3 (2005) ("At present, the statute of limitations for an action for injury to an individual caused by the wrongful act or neglect of another must be commenced within two years from the date of accrual.").

"Normally, the general rule for defining the accrual of a cause of action should govern a cause of action for products liability . . . .  For both negligence and strict liability products liability claims, the last element to occur is generally, as a practical matter, the injury to the future plaintiff." *Fox*, 35 Cal. 4th at 809.  One exception to this rule is the discovery rule, which "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* at 807.  "In order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id*. at 808 (citation and internal quotation marks omitted) (emphasis in original).

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1110 (1988); *see also Rivas v. Safety-Kleen Corp*., 98 Cal. App. 4th 218, 242 (2002) (citation and internal quotation marks omitted) (a personal injury action "accrues as soon as the plaintiff suffers an injury and suspects or should suspect that [his or] her injury was caused by wrongdoing or has notice or information of circumstances to put a reasonable person on inquiry").

A plaintiff is also under a duty to investigate the cause of his or her injury.  *See id.* at 242 ("Once [parties] knew or reasonably should have known that [a product] was the likely potential

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

source of their respective injuries, they had the responsibility to investigate and determine whether to pursue legal action."); *Jolly,* 44 Cal. 3d at 1112 ("Because a plaintiff is under a duty to reasonably investigate and because a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period, suits are not likely to be unreasonably delayed, and those failing to act with reasonable dispatch will be barred.") (emphasis in original); *id.* at 1111 ("So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.").

Even when accrual is delayed under the discovery rule, "*Jolly* 'sets forth two alternate tests for triggering the limitations period: (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing. . . . The first to occur under these two tests begins the limitations period." *Wolfe v. C. R. Bard, Inc.*, 2021 WL 2980357, at *2-3 (C.D. Cal. May 10, 2021) (quoting *Nguyen v. Western Digital Corp.*, 229 Cal. App. 4th 1522, 1540-41 (2014)). And "[w]hile resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." *Rosas v. BASF Corp.*, 236 Cal. App. 4th 1378, 1388 (2015).

Here, the facts establish the following timeline regarding Plaintiff's injuries:

- On November 30, 2000, Plaintiff underwent surgery with Dr. Shlomo Raz at the UCLA Medical Center in Los Angeles, California, to treat her stress urinary incontinence. (SUF No. 1.) Dr. Raz performed a transvaginal bladder neck suspension, using a sling he created by cutting a piece out of a sheet of Prolene mesh. (*Id.*)

- On March 22, 2010, Plaintiff applied for social security disability insurance benefits, alleging disabilities including "unmanageable" urinary incontinence. (*Id.* ¶ 23.) Plaintiff was granted disability benefits and was found to have a disability dating back to January 20, 2009. (*Id.*)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

- On April 27, 2011, Plaintiff reported urinary urgency, frequency, nocturia, and incontinence, but not dysuria, to Dr. Carol L. Mitchell-Springer.  (*Id*. ¶ 24.)

- On December 14, 2012, Plaintiff consulted Dr. Biehl about urinary symptoms similar to those she described to Dr. Mitchell-Springer: urine leakage, including overactive bladder symptoms, and stress urinary incontinence.  (*Id*. ¶ 29.)

- Plaintiff had an additional consultation with Dr. Biehl on December 21, 2012, and a follow-up appointment on February 4, 2013.  (*Id*. ¶ 30.)  At the February 4, 2013, appointment with Dr. Biehl, he noted in his records that she would follow up in 6 weeks. (*Id*.)  Plaintiff remembered that Dr. Biehl, whom she did not see after early 2013, told her she had a fistula.  (*Id*. ¶ 31.)  Plaintiff testified that she made an appointment with Dr. Raz, and "it took [her] quite some time to get in to see him."  (*Id*. ¶ 32.)

- On May 28, 2013, Plaintiff returned to UCLA to request the removal of her Prolene mesh sling.  (*Id*. ¶ 33.)  She saw Dr. Lisa Rogo-Gupta and stated that her request for sling removal was based in part on her own internet research, as well as due to her worsening incontinence and failed medication treatment.  (*Id*.)  Dr. Rogo-Gupta performed a physical examination and determined that Plaintiff had vaginal atrophy and that her sling was palpable.  (*Id*.)  After an "extensive[]" consultation, Plaintiff persisted in her desire to proceed with sling removal with Dr. Raz.  (*Id*.)

- On September 26, 2013, Plaintiff told her doctor in Alaska, Dr. Kathleen Case, that she was having "immune problems" that she believed were caused by the mesh.  (*Id*. ¶ 34.) Plaintiff further reported that when she saw the doctors at UCLA, in the spring of 2013, they told her they had seen women with systemic problems related to the sling, and Dr. Raz "had offered to remove the sling."  (*Id*.)

- On October 24, 2013, Plaintiff had mesh removal surgery with Dr. Shlomo Raz.  (*Id*. ¶ 35.)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

- At no point did any treater inform Plaintiff that her mesh was defective prior to her October 24, 2013, surgery. (P. SUF No. 16.) In fact, when she presented to Dr. Raz's office on May 28, 2013, she was told the opposite – that there was no sign of infection or erosion. (*Id.*)

- Plaintiff first understood her mesh may be defective when Dr. Raz informed her post-operatively on October 24, 2013, that he had discovered infected mesh and that the mesh penetrated the vaginal wall. (*Id.* ¶ 17.)

- Plaintiff testified that prior to her October 2013 revision surgery, neither Plaintiff, nor any of her treating physicians, knew what caused her symptoms. (*Id.* ¶ 18.)

- On August 11, 2015, Plaintiff filed this lawsuit. (D. SUF No. 36.)

Defendants argue that Plaintiff suspected the Prolene mesh was the cause of her injuries by May 28, 2013, when Plaintiff made an appointment at UCLA to request removal of her Prolene mesh. (Mot. at 18-19 (citing D. SUF Nos. 33-34).) According to Defendants, the undisputed facts demonstrate that by May 28, 2013, Plaintiff had determined that she wanted sling removal based "in part on her own internet research, as well as due to her worsening incontinence and failed medication treatment" and that Plaintiff "persisted in her desire to proceed with sling removal with Dr. Raz" after an "extensive consultation." (D. SUF No. 33.) Defendants further argue the undisputed facts demonstrate that at another appointment on September 26, 2013, Plaintiff confirmed that "when she saw the doctors at UCLA, in the spring of 2013, they told her they had seen women with systemic problems related to the sling, and Dr. Raz 'had offered to remove the sling.'" (*Id.* ¶ 34.) Defendants thus argue Plaintiff's claims accrued by May 28, 2013, and expired by May 28, 2015, rendering her lawsuit filed on August 11, 2015, untimely. (Mot. at 19.)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

Plaintiff argues a genuine dispute of material fact exists regarding the accrual date of her claims because she only discovered that her mesh was defective after her October 24, 2013, surgery.  (Opp. at 7-8.)  Plaintiff further argues that "there is no evidence in the record that any treating physician informed Plaintiff that her mesh was defective" and that "[i]t was not until after the October 24, 2013, revision surgery that Dr. Raz discovered and informed Plaintiff that her mesh was infected and had penetrated the vaginal wall."  (*Id.* at 15-16.)

The court finds that there is a genuine dispute of material fact as to when Plaintiff's claims accrued.  The court briefly reviews the parties' evidence below.

Defendants cite to the following evidence based on Plaintiff's medical records:

Mrs. Cloutier is a 60-year-old . . . who returns to us 13 years after a sling procedure with the above-mentioned symptoms . . . .  She read on the internet regarding the possible connection of foreign bodies and autoimmune disease, and so she comes to request removal of the sling . . . .  Mrs. Cloutier . . . desire[s] sling removal.  We discussed with her at length the possible relationship and we cannot predict whether or not removal of the sling will significantly impact her most concerning symptoms, which are urge urinary incontinence and asthma.  Despite this, the patient would like to proceed with removal in the case that this would potentially help her symptoms.  The patient was counseled extensively.

(*See* Wes Decl. ¶ 4, Exh. 3, CLOUTIERD_RRUMC_MDR00002-04.)

Plaintiff's medical record from a September 26, 2013, appointment also notes that when Plaintiff had her May 28, 2013, appointment at UCLA, she was advised that "they have seen some women with systemic problems" due to the sling:

She reports a history of incontinence x 18-20 years.  A "vaginal sling" was placed in 2000 by Dr Shlomo Raz – unfortunately it did not help her symptoms.  She states she knows she is having "immune problems" including dry eye arthritis and asthma

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

and believes this is all caused by the bladder sling.  She was seen at UCLA this Spring and was advised that they have seen some women with systemic problems r/t the sling.  Dr Raz has offered to remove the sling and if necessary reconstruct from her own tissues if needed.

(*See* Wes Decl. ¶ 4, Exh. 3, CLOUTIERD_ARSHC_MDR00090-92 (cleaned up).)

However, Plaintiff testified that she first realized that the mesh may be the cause of her symptoms after her mesh removal surgery:

A. At the time when these problems existed, started, I didn't even put the two together.  It wasn't until after Dr. Raz removed the mesh that I thought, wow, maybe, just maybe.  This has been an ongoing thing all along, and I just never knew what it was nor did any doctor.
Q. Has any doctor ever told you that mesh has caused any of the problems you've had, other than Dr. Raz telling you that you had an infection and you had mesh erosion?
A. No.  That's just my idea.

(*See* Hooten Decl. ¶ 4, Exh. C, Cloutier Dep. at 41:20-42:7.)

The court finds that, per the parties' cited evidence, the record is not sufficiently definite as to when Plaintiff first believed the mesh may be the cause of her symptoms.  Accordingly, the court finds that there is a genuine dispute of material fact as to when Plaintiff believed the mesh was the cause of her symptoms and thus when Plaintiff's claims accrued for the statute of limitations.  (*Compare* D. SUF Nos. 33-34, *with* P. SUF Nos. 16-18.)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

**b.  Count I – Negligence (Negligent Warning and Negligent Design)**

The court notes that Plaintiff's first claim for negligence encompasses both "negligent warnings" and "negligent design."  (Opp. at 1.)  Accordingly, the court first considers Plaintiff's claim for negligent warning.

To prevail on a negligence claim, "plaintiffs must show that [defendants] owed them a legal duty, that [defendants] breached that duty, and that the breach was a proximate or legal cause of their injuries."  *Merrill v. Navegar, Inc*., 26 Cal. 4th 465, 477 (2001) (citations omitted); *see also Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 687 (2018) ("The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages.").  "A failure-to-warn claim may be brought under either a theory of negligence or a theory of strict liability."  *Hannan v. Bos. Sci. Corp*., 2020 WL 2128841, at *6 (N.D. Cal. May 5, 2020).

In explaining the difference between strict liability and negligence in failure-to-warn cases, the California Supreme Court has held that:

[F]ailure to warn in strict liability differs markedly from failure to warn in the negligence context.  Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about.

Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct.  The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.  Thus, in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial.

**CIVIL MINUTES – GENERAL**

33

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

*Carlin v. Superior Ct*., 13 Cal. 4th 1104, 1112 (1996) (quoting *Anderson v. Owens–Corning Fiberglas Corp*., 53 Cal. 3d 987, 1002-03 (1991)).

To prevail on a claim of negligent failure to warn under California law, a plaintiff must prove the following elements:

(1) the defendant manufactured, distributed, or sold the product; (2) the defendant knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner; (3) the defendant knew or reasonably should have known that users would not realize the danger; (4) the defendant failed to adequately warn of the danger or instruct on the safe use of the product; (5) a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product; (6) the plaintiff was harmed; and (7) the defendant's failure to warn or instruct was a substantial factor in causing the plaintiff's harm.

*Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011-12 (N.D. Cal. 2009) (citing Jud. Council of Cal. Civ. Jury Instruction No. 1222), *aff'd sub nom. Rosa v. Taser Int'l, Inc*., 684 F.3d 941 (9th Cir. 2012).

"It is the plaintiff's burden to demonstrate that he or she would have acted differently if provided with adequate warnings." *Sanchez v. Bos. Sci. Corp*., 38 F. Supp. 3d 727, 732 (S.D. W.Va. 2014) (applying California law and citing *Ramirez v. Plough, Inc*., 6 Cal. 4th 539 (1993)).

Additionally, "[t]he learned intermediary rule is part and parcel of a failure-to-warn analysis in California." *Sanchez*, 38 F. Supp. 3d at 732. "Under the learned intermediary rule, manufacturers of prescription drugs and medical devices satisfy their duty to warn if they provide adequate warnings to prescribing physicians, rather than patients." *Id*. (citing *Carlin*, 13 Cal. 4th at 1116); *see also Brown v. Superior Ct*., 44 Cal. 3d 1049, 1062 n.9 (1988) ("It is

**CIVIL MINUTES – GENERAL**

34

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

well established that a manufacturer fulfills its duty to warn if it provides adequate warning to the physician."); *Hannan*, 2020 WL 2128841 at *7 (applying learned intermediary rule to a defendant's pelvic mesh products).

Where the learned intermediary doctrine applies, to prove causation, a "plaintiff asserting causes of action based on a failure to warn must prove not only that no warning was provided or the warning was inadequate, but also that the inadequacy or absence of the warning caused the plaintiff's injury." *Motus v. Pfizer Inc*., 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001), *aff'd sub nom. Motus v. Pfizer Inc. (Roerig Div.),* 358 F.3d 659 (9th Cir. 2004); *see also id*. at 995 ("Pfizer may prevail in its motion for summary judgment if Ms. Motus has failed to adduce evidence that Dr. Trostler would have acted differently had Pfizer provided an adequate warning[.]"), *aff'd* 358 F.3d 659 (9th Cir. 2004); *Georges v. Novartis Pharm. Corp*., 988 F. Supp. 2d 1152, 1157 (C.D. Cal. 2013) ("Plaintiff must demonstrate . . . that the injuries resulting from her ONJ resulted from Defendant's inadequate warnings of the risks of the Treatment Drugs."); *Plummer v. Lederle Lab'ys, Div. of Am. Cyanamid Co*., 819 F.2d 349, 358 (2d Cir. 1987)  (applying California law and holding that "the plaintiff failed to prove that a proper warning would have altered the doctor's conduct.").

Here, Defendants argue Plaintiff's negligent warning claim fails because "Plaintiff cannot prove that different warnings would have changed Dr. Raz's prescribing decision."  (Mot. at 9.)  In other words, Defendants argue that Plaintiff cannot prove causation because the undisputed facts demonstrate that different warnings would not have changed Dr. Raz's decision to use the mesh "off-label."  (*Id*. at 9; Reply at 7-12.)  According to Defendants, if Dr. Raz used the mesh "off-label," it necessarily demonstrates that he did not rely on the IFU and its warnings.  (Mot. at 10.)

Defendants point to the following facts as support:[4]

_____

[4] The court notes that although Defendants cite to D. SUF Nos. 13, 14, and 16, the court has already found that there is a genuine issue of material fact as to these facts in Section III (a).

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

(1) The IFU states: "This mesh may be used for the repair of hernia and other fascial
deficiencies that require the addition of a reinforcing or bridging material to obtain the
desired surgical result." (D. SUF No. 2);

(2) Dr. Raz admits his use of Prolene mesh was off-label and that the device was not
intended to be used for treatment of SUI. (*Id.* ¶ 5);

(3) Dr. Raz stated of Prolene mesh's description in the IFU: "This is not for stress
incontinence, the description." (*Id.* ¶ 6);

(4) Plaintiff's case-specific expert, Dr. Bruce A. Rosenzweig, agrees that Dr. Raz's use of
Prolene mesh was off-label. (*Id.* ¶ 7);

(5) According to Plaintiffs' expert Dr. Rosenzweig, different pre-cut mesh medical devices
were available at the time of Plaintiff's 2000 surgery, including Ethicon's TVT mesh
device indicated to treat stress urinary incontinence. (*Id.* ¶ 8); and

(6) Dr. Raz's decision to use Prolene mesh off-label instead of a TVT mesh kit in 2000 was
driven by the relative cost of the two devices. (*Id.* ¶ 9).

Plaintiff maintains there is a genuine dispute as to whether Dr. Raz used Prolene in a
manner consistent with the IFU, whether he read and relied on the IFU, and whether he would
have acted differently with a different warning. (Opp. at 4-5.) Plaintiff points to the following
facts as support:[5]

(1) The Prolene mesh IFU states, "This mesh may be used for . . . other fascial deficiencies
that require the addition of a reinforcing or bridging material to obtain the desired
surgical result." (P. SUF No. 9);

(2) Dr. Raz testified that he "cut [the mesh] 10 centimeter by 1 centimeter" to fashion a
sling. (*Id.* ¶ 11);

(3) In the "implant operative report," Dr. Raz indicates three surgical procedures to be
performed: transvaginal bladder neck suspension sling procedure using Prolene mesh;
cystoscopy; and placement of suprapubic catheter. (*Id.* ¶ 12);

---

[5] The court notes that although Plaintiff cites to P. SUF No. 15, the court has already found that
there is a genuine issue of material fact as to this fact in Section III (b).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                        Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

(4) Dr. Raz testified numerous times that he read and relied on the IFU.  (*Id.* ¶ 13.);
(5) Dr. Raz testified that he would have acted differently had he received an adequate
     warning.  Specifically, he would not have implanted the Prolene in Plaintiff.  (*Id.* ¶ 14.).

Based on the record, the court finds there is a genuine dispute of material fact as to
whether Dr. Raz used the mesh "off-label," and by doing so, necessarily did not rely on the IFU
and its warnings.  First, the court notes it is undisputed that Dr. Raz testified that he used the
mesh "off-label" and described the IFU as being "not for stress incontinence, the description."
(*See* D. SUF Nos. 5-9; Wes Decl. at ¶ 3, Exh. 2, Raz Dep. at 141:10-21; 147:16-22.)  It is also
undisputed that the IFU states: "[t]his mesh may be used for the repair of hernia and other
fascial deficiencies that require the addition of a reinforcing or bridging material to obtain the
desired surgical result."  (*See* D. SUF No. 2; P. SUF No. 9.)

However, Dr. Raz also offered contradictory testimony stating that he read and relied on
the IFU.  (*See* P. SUF No. 13; Hooten Decl. at ¶ 3, Exh. B, Raz Dep. at 159:12-18 ("Q: And in
2000 did you also rely upon Ethicon's representations about their product and what they said
the risks were? A: Yes. Q: And that would include, would it not, the instructions for use that
were there in 2000? A Yes.").  Dr. Raz also testified that different warnings would have
changed his decision to use Prolene mesh.  (*See* P. SUF No. 14; Hooten Decl. at ¶ 3, Exh. B,
Raz Dep. at 144:18-23 ("Q: If the instructions for use had said to you specifically there are
latent complications with the use of Prolene mesh, including pelvic pain, vaginal erosions, and
urethral erosions, would you have used Prolene mesh for Ms. Cloutier? A: No.").)

In short, the record reflects that although Dr. Raz testified that he believed his use was
"off-label," he also testified that he read and relied on the IFU and would have acted differently
given different warnings.  Accordingly, the court finds there is a genuine dispute of material
fact as to whether Dr. Raz used the mesh "off-label" and necessarily did not rely on the IFU and
its warnings.  The court **DENIES** the Motion as to Count I: Negligence (Failure to Warn).

_____

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

### c. Count I – Negligence (Negligent Design)

The court next considers Plaintiff's claim under Count I – Negligence – Negligent Design. Defendants argue Plaintiff's design defect claim fails because Prolene mesh was not designed for pelvic implantation. (Mot. at 13-14.) Defendants argue there is no genuine dispute that Dr. Raz used the mesh "off-label," Prolene mesh has a different design from mesh that was actually designed for pelvic implantation, and Plaintiff's expert did not consider design defects in assessing Plaintiff's injuries. (*Id.*) Plaintiff argues Prolene mesh is the same mesh found in other pelvic implantation products, and Plaintiff has offered sufficient expert evidence identifying the defects of Prolene mesh. (Opp. at 7.)

Under California law, "a product may be found defective in design if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978). Generally, "the test of negligent design involves a balancing of the likelihood of harm to be expected from a [product] with a given design and the gravity of harm if it happens against the burden of the precaution which would be effective to avoid the harm." *Merrill*, 26 Cal. 4th at 479 (citation omitted). "Even if a manufacturer has done all it reasonably could have done to warn about a risk or hazard related to a product's design, a reasonable person could conclude that the magnitude of the reasonably foreseeable harm as designed outweighed the utility of the product as designed." *Tucker v. Wright Med. Tech., Inc.*, 2013 WL 1149717, at *7 (N.D. Cal. Mar. 19, 2013) (citing *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1305 (2012)).

Here, as discussed above, the court finds there is a genuine dispute as to whether Dr. Raz used the mesh "off-label" and in doing so, necessarily did not rely on the IFU and its warnings. (*See* Section VI (b).) (*Compare* Hooten Decl. ¶ 3, Exh. B, Raz Dep. at 144:18-23; 159:12-18, *with* Wes Decl. ¶ 3, Exh. 2, Raz Dep. at 141:10-21; 147:16-22).)

As for whether Prolene mesh has a different design from mesh that was actually designed for pelvic implantation, the court has also found that there is a genuine dispute as to this issue.

---

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

(*See* Section III (a).)  (*Compare* Hooten Decl. ¶ 8, Exh. G, Angelini Dep. at 81:18-21; Hooten Decl. ¶ 9, Exh. H, Hellhammer Dep. at 95:8-21, *with* Wes Decl. ¶ 8, Exh. 7, Barbolt Dep. at 107:21-23; 111:7-14).)

Finally, as to whether Plaintiff's expert considered design defects and how they affected Plaintiff's outcome, as discussed above, the court finds there is a genuine dispute as to this issue.  (*See* Section III (a).)  The expert report of Plaintiff's expert Dr. Rosenzweig explicitly lists "loss of pore size with tension" as one of the design flaws of Prolene mesh, which a reasonable jury could credit as forming part of the basis for his assessment of Plaintiff's outcome.  (*See* Hooten Decl., Ex. J, August 19, 2019, Rule 26 Expert Rep. of Bruce Rosenzweig, M.D. at 7-11,13.)

Accordingly, the court finds there are genuine disputes of material fact as to whether Dr. Raz's use of the mesh was "off-label," Prolene mesh has a different design from other mesh used for pelvic implantation, and Plaintiff's expert considered design defects in assessing Plaintiff's injuries.  The court **DENIES** the Motion as to Count I: Negligence (Negligent Design).

### d.  Count III – Strict Liability (Failure to Warn)

The court next considers Plaintiff's claim under Count III – Strict Liability – Failure to Warn.  Defendants argue Plaintiff's strict liability claim for failure to warn fails for the same reason as Plaintiff's negligence claim—Plaintiff cannot prove that different warnings would have changed Dr. Raz's prescribing decision.  (Mot. at 8-13.)

"A failure-to-warn claim may be brought under either a theory of negligence or a theory of strict liability."  *Hannan*, 2020 WL 2128841, at *6.  As detailed above, the California Supreme Court has explained a strict liability failure-to-warn claim differs markedly from a negligence failure-to-warn claim:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct. The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Thus, in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial.

*Carlin*, 13 Cal. 4th at 1112 (quoting *Anderson*, 53 Cal. 3d at 1002-03).

To prevail on a claim of strict liability failure-to-warn under California law, a plaintiff must prove the following elements:

(1) the defendant manufactured, distributed, or sold the product; (2) the product had potential risks that were known or knowable at the time of manufacture or distribution, or sale; (3) that the potential risks presented a substantial danger to users of the product; (4) that ordinary consumers would not have recognized the potential risks; (5) that the defendant failed to adequately warn of the potential risks; (6) that the plaintiff was harmed while using the product in a reasonably foreseeable way; (7) and that the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm.

*Rosa*, 675 F. Supp. 2d at 1011 (citing Jud. Council of Cal. Civ. Jury Instruction No. 1205).

As discussed above, the court finds that, based on the record, there is a genuine dispute as to whether Dr. Raz used the mesh "off-label" and necessarily did not rely on the IFU and its warnings.  (*See* Section VI(b).)  (*Compare* Hooten Decl. ¶ 3, Exh. B, Raz Dep. at 144:18-23; 159:12-18, *with* Wes Decl. ¶ 3, Exh. 2, Raz Dep. at 141:10-21; 147:16-22).)  In short, the record reflects that although Dr. Raz testified that he believed his use was "off-label," he also testified that he read and relied on the IFU and would have not administered the Prolene mesh to Plaintiff given different warnings.  Accordingly, the court finds there is a genuine dispute of

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

material fact as to whether Dr. Raz used the mesh "off-label" and necessarily did not rely on the
IFU and its warnings.  The court **DENIES** the Motion as to Count III: Strict Liability (Failure to
Warn).

### e.  Count XIV – Gross Negligence

The court next considers Plaintiff's claim under Count XIV – Gross Negligence.
Defendants argue gross negligence is not cognizable under California law as a separate cause of
action.  (Mot. at 22-23.)  Plaintiff contends she is entitled to argue punitive damages at trial
"[r]egardless of whether gross negligence is a separate cause of action under California law."
(Opp. at 17.)

The court agrees with Defendants that gross negligence is not cognizable under
California law as a separate cause of action independent of a statutory basis.  *See Saenz v.
Whitewater Voyages, Inc.*, 226 Cal. App. 3d 758, 766 n.9 (1990) ("In reality, California does
not recognize a distinct cause of action for 'gross negligence' independent of a statutory
basis."); *Cont'l Ins. Co. v. Am. Prot. Indus.*, 197 Cal. App. 3d 322, 329 (1987) ("Numerous
California cases have discussed the doctrine of gross negligence.  Invariably these cases have
turned upon an interpretation of a statute which has used the words 'gross negligence' in the
text."); *Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal. App. 4th 546, 552 n.3 (2015) ("We
agree with plaintiffs that California does not recognize a distinct common law cause of action
for gross negligence apart from negligence.").

Accordingly, the court finds gross negligence is not cognizable under California law as a
separate cause of action independent of a statutory basis.  Nor does Plaintiff bring any statutory
claims or argue that gross negligence exists as a separate cause of action.  (Opp. at 17-18.)  The
court **GRANTS** the Motion as to Count XIV – Gross Negligence.

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:20-cv-09739-FWS-MRW                    Date: November 3, 2022
Title: Deborah Cloutier v. Ethicon, Inc. *et al.*

## VII.    CONCLUSION

As to Counts I and III in the Complaint, the court finds that Defendants have not met their burden of demonstrating there are no genuine disputes as to any material facts and that they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The court further finds that Plaintiff has "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see also Harper*, 877 F.2d at 731 (summary judgment is not precluded by "mere disagreement or the bald assertion that a genuine issue of material fact exists."). Therefore, the Motion is **DENIED** as to Counts I and III in the Complaint.

However, as to Count XIV in the Complaint, the court finds that Plaintiff's claim of gross negligence is not cognizable under California law as a separate cause of action independent of a statutory basis, and none is pleaded here. Accordingly, the Motion is **GRANTED** as to Count XIV in the Complaint.

## VIII.    DISPOSITION

For the reasons set forth above, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

The Clerk shall serve this minute order on the parties.

Initials of Deputy Clerk:  mku